Ruffin, C. J.
 

 The plaintiffs have entirely failed to establish those parts of their case, which depend on an agreement of David Hogue to sell their share of the land for them with his own, or an agreement after the sale, that they should confirm it by a conveyance of their share, and thereupon receive a due proportion of the purchase money. The answer directly denies any such agreements, and the plaintiffs have not given any evidence of either. If there had been evidence upon either
 
 *421
 
 of those heads, the Court would have been at much loss, upon these pleadings, how to give the plaintiffs the benefit of it. The bill, as at first framed, states a title in the plaintiffs under a devise from the former owner, Stephen Hogue, and then an authority from them by parol to David Hogue, to sell their share, and an agreement on his part to do so on their behalf. Afterwards, upon leave to amend their bill, the plaintiffs, without striking out those allegations, allege as new matter, that Stephen Hogue did not devise the land, but that it descended from him to them, and that they did not authorize David Hogue to sell their share, but that he sold it without their consent or knowledge, though they were willing, after the sale was made, to abide by it, because the price was a good one, provided they got their share of the price. It seems not to have been considered, that the bill was thus rendered contradictory in its state of events, or not remembered that the party is bound by every part of his pleadings, and that the Court can no more decree for him against the allegations in one part of them than those in another. In such a case an amendment must be made by striking out the portions in which a mistake has been made, and then adding the allegations according to the truth, as the party means to make it appear. Instead of the pleadings being amended by such means as those here used, they are perplexed and rendered absurd by containing contradictory allegations from the same party. It is true there is no harm done here, because the defendant agrees, that he did not act upon an authority from the plaintiffs j and they have offered no evidence that they came to an agreement, after the sale, that the plaintiffs should have a part of the price got for the land.
 

 The case therefore turns entirely upon the part of the bill, which seeks to set aside the deed to David Hogue, upon the ground that it was obtained from the plaintiffs by fraud or surprise, being for different or more land than
 
 *422
 
 that contracted for. The first observation upon this point is, that the interests of Mrs. Milton are not all involved in it; for the instrument has no operation as to her, as upon its face it is an indenture between her husband and brother alone, and, even if that were otherwise, it would still be void as to her, for waiit of execution in the manner necessary to give efficacy to the deed of a married woman. In due time, therefore, she will have her remedy at law upon her legal title by ejectment and partition ; and she has no ground /or relief here. For, without a contract between the parties, the sale of the whole tract of land and receipt of the pi'ice by one tenant iix common, does not turn him into a trustee for a eo-tenaxxt; as the latter still has the legal title to his own share and can have redress oxx it at law. It is not like a sale by one, of the personal property of another, in which case the owner may waive the tort and ti’eat it as a sale made for him, and recover the price as money had and received to his use ; because the property passes by parol. Bxxt it is otherwise in x-espect to land ; for that can pass only by deed, and the purchaser may refuse to accept
 
 it
 

 Then, in regard to the deed, as the deed of the husband alone, the question is, whether a sufficient ground is laid for holding it to have been obtained by fraud or surprise.
 

 . There is no doubt, that there was a mistake in it in one respect; which was iix drawing it as the deed of the husband alone “ for his xxndivided shax’e” of the two tracts of land described in it. For it was the intention that the husband and wife should unite in conveying both his right as tenaxxt by the curtesy, and also her right to the inheritance in some land. But that mistake is one, which is not to the prejudice of the plaintiff and of which he does not complain. The ground of surprise on him he alleges in the bill to be, that he and his wife agreed to sell to David Hogue other land, namely, the share of the
 
 *423
 
 wife in the lands that had been allotted to her deceased sister Delpha, as her part of her father’s estate. That lot did not, according to the bill, include any part of the gold mine tract; for the bill alleges, first, that partition had not been made of that tract, and consequently no part of it had been assigned in severalty to Delpha ; and, secondly, that partition had been made of all the lands descended, except the 100 acres, which is the subject of this controversy, and consequently Belpha’s share of the other lands was held by her in severalty. The subject of the sale to David Hogue was, therefore, according to the bill, Mrs. Milton’s undivided share o.f the land, that had beers allotted in severalty to. Delpha Hogue in. a division of a part of the land descended from the father — which part included all the land descended, excepting onty the 100 acres held by the widow as- dower, and on which gold was afterwards found. Now, that statement the answer distinctly and positively denies-;, and it states that the defendant purchased all the iutercsts which Milton and his wife fhen had in any of the lands, which had d< - scended from the father, Stephen Hogue, including the 100 acres, whether the interest was derived hv be;' directly from the father as one of his heirs, or through Deipha as one of her heirs. Between the parties thus at issue, the Court is obliged to decide on the greater credit-’ due to the sworn answer of the defendant, unless it be-overborne by the evidence to the contrary of indifferent witnesses. But there is not such evidence in this case. There is but one witness who says any thing material on the subject, namely, the writer and witness to the deed ; and his testimony is very unsatisfactory. To say nothing of the distant period from the transaction at which be, gave his testimony, it is obvious that his means of information, as to the subject of the contract, wore verv imperfect, and that, in truth, according to both" ihe bill and answers, bis statement of it, even as far as it goes, is
 
 *424
 
 quite erroneous. He was not present at the bargain, and did not hear the terms, nor the subject of it described by the parties or either of them ; but learnt all he knows from a third person, who. he says, furnished him with the title papers in order to get the boundaries of the land for which the deed was to be written, and yet told him that no part of one of the tracts, therein conveyed, had been sold. He, however, does say distinctly, that he did not understand the gold mine tract was to be included, but understood from that person, that it was not to be. Let us see, then, what, according to his understanding, was to be conveyed. He does not mention
 
 Delpha
 
 at all, nor allude to her share. He says, he understood that the deed was to be for “ the undivided portion ' of
 
 Zilphia
 
 (the plaintiff) in the lands which fell into possession on the death of her father.” He obviously means thereby all the land descended from the father, except the 100 acres which was assigned to the widow as dower, and therefore was not considered as having fallen into possession immediately after the father’s death. Now, undoubtedly, the witness is entirely mistaken in this part of his evidence : for of the land, that fell into possession at the death of the father, there was, at that time, none undivided. The bill itself states, that all the land descended had been divided, except the widow’s dower. .Consequently, theplaintiffZilphiahad then no “undivided portion” in the lands of the father, except in the gold mine tract. All this goes to shew, that the witness had no accurate knowledge on the subject of the contract — • much less that he could give such a statement of it as would repel the credit due to the answer, and the pre- . sumption from the execution of the dee.d. itself, that it correctly sets forth the subject of the sale. ■ That presumption is much fortified by the just inference from the silence of the plaintiffs, under much necessity, for so long a period (upwards of nine years,) with respect to the
 
 *425
 
 rights and grievances set forth in this bill. No regard can be paid to the offers of compromise, upon the principle of the law of evidence which excludes them. But, besides, there was a plain motive for the offers of the defendant, independent of an acknowledgement of any of the wrongs to the plaintiffs alleged in the suit: which was to obtain a proper deed for the inheritance belonging to the plaintiff Zilphia, as some day it may be very important to him to have that title. The Court must therefore declare, that the plaintiffs have not established, that the deed in question was obtained by the defendant by fraud or surprise, or that it conveys any land which the parties thereto did not intend' at the time should be conveyed.
 

 Per Curiam.
 

 The bill dismissed with costs.